354 S.E.2d 603

**In re Petition by James M. MATHERLY for Judicial Review of Administrative Decision Made by Thomas J. Stevens, Commissioner, Etc.**

**No. 17036.**

Supreme Court of Appeals of
West Virginia.

Feb. 25, 1987.

Doren Burrell, Asst. Atty. Gen., Charleston, for appellant.

Randy D. Hoover, Meadows, Crews, Hoover & Truman, Beckley, for appellee.

NEELY, Justice:

This is an appeal from a circuit court order setting aside an order of the Commissioner of Motor Vehicles. On 25 July 1984 Trooper C.E. Dorsey, III, saw the appellee, Mr. James Matherly, run a red light. The trooper signaled Mr. Matherly to stop, and Mr. Matherly pulled off of the road into a parking lot. While speaking to the appellee, Trooper Dorsey noticed that the appellee had a glassy stare and smelled of alcohol. When the trooper asked Mr. Matherly to get out of the car, Mr. Matherly nearly fell.

Trooper Dorsey then arrested Mr. Matherly for driving while under the influence of alcohol. At that time, the trooper advised Mr. Matherly of his rights concerning the breath analysis test. When asked whether he would submit to the breath analysis test, Mr. Matherly did not answer. Trooper Dorsey repeated the question several times and each time he received no response. Finally, Trooper Dorsey informed Mr. Matherly that his failure to answer would be considered a refusal to submit to the test. Mr. Matherly was given a written statement of the consequences of such refusal and charged with refusing to take the designated chemical test.

Mr. Matherly was given an opportunity to contest the charge of refusal to take the test at an administrative hearing conducted by the Department of Motor Vehicles. At that hearing, Mr. Matherly conceded that he had been drunk, but argued that he had been incapable of intelligently refusing to submit to the test because of his intoxication and emotional condition. The commissioner concluded, however, that the appellee had in fact refused to take the test and revoked Mr. Matherly's license for one year under *W.Va.Code*, 17C–5–7 .[1983].[1] The Circuit Court of Raleigh County vacated this order and substituted a six month revocation for driving while under the influence of alcohol.

The commissioner now contends on appeal that (1) intoxication and emotional distress did not render Mr. Matherly incapable of refusal, and (2) the circuit court was without authority to *modify* the administrative order to reflect a violation of law *not* charged by the agency. Because we resolve the first assignment of error in favor of the Commissioner, we have no occasion to consider the second.

Mr. Matherly asserts three analytically distinct defenses. First, Mr. Matherly argues that his behavior did not constitute a refusal to take the test; second, Mr. Matherly argues that he was too intoxicated to understand the nature of the officer's re-

---

1. Minor amendments were made to *W.Va.Code*, 17C–5–7 [1983] in 1986. Because the incidents giving rise to this proceeding occurred before the effective date of the amendment, we technically decide this case under the statute in its 1983 form. However, our interpretation of the statute as it stood in 1983 is equally applicable to the statute in its current form, *videlicet*, *W.Va.Code*, 17C–5–7 [1986].

quest and the potential consequences of his refusal; and, third, Mr. Matherly argues that his state of extreme emotional distress rendered him incapable of understanding the nature of the officer's request and the consequences of his refusal.

## I

We set forth the general rule governing whether a refusal has been made under *W.Va.Code* 17C–5–7 [1983] in *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259, 264 (1978). There we said:

> Where the request is made to take the test and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his consent to take the test on factors that are extraneous to the procedure surrounding the test, proof of refusal is sufficiently established.

The question, therefore, is whether Mr. Matherly by his silence manifested a reluctance to take the test. The statute does not expressly answer this inquiry, nor do our previous cases. However, it is clear that, were we to adopt a rule that refusal cannot be inferred from informed silence, we would open a loophole in the statute so enormous that even the most intoxicated motorist could drive a truck through it. An intoxicated driver could simply remain mum when asked to take the chemical analysis test, thereby avoiding the year's suspension under 17C–5–7 [1983], while at the same time depriving the prosecution of evidence of drunk driving. The anomalous result would be that, although those who refuse to take the test receive a one year suspension, and those who consent to the test and are convicted based on its results receive a six month suspension, those who simply remain silent risk at the most a six month suspension, and by depriving the prosecution of valuable chemical evidence reduce the risk that they will receive any punishment at all.

■ We therefore hold that, when the requirements of *W.Va.Code* 17C–5–7 [1983] have otherwise been met, and a driver refuses to or fails otherwise to respond either affirmatively or negatively to an officer's request that he submit to a chemical analy-sis test, the driver's refusal or failure to respond is a refusal to submit within the meaning of *W.Va.Code* 17C–5–7 [1983].

## II

We now address Mr. Matherly's argument that he was too intoxicated to understand the nature of the officer's request and the potential consequences of his refusal. The reasons for rejecting this "too drunk to understand" defense are legion, and most of them have been identified by other state courts considering this issue.

■ First, *W.Va.Code* 17C–5–7 [1983] makes no provision for such a defense. Nor does the statute require that the refusal be intelligently, knowingly and willingly made. The statute requires only that the driver refuse to take the test. We will not engraft onto the statute a specific intent requirement where it is apparent that none was intended by the legislature.

■ Second, the extreme state of inebriation in which the driver may find himself at the time he is asked to take the test cannot be attributed to divine intervention or the work of Descartes' demon. The driver has become intoxicated by *voluntarily* consuming an alcoholic beverage. One who has voluntarily become intoxicated and then, while in his drunken state, committed a crime, may not ordinarily raise his voluntary intoxication as a defense to criminal liability. *State v. Bailey,* 159 W.Va. 167, 220 S.E.2d 432 (1975). Neither may a drunk driver, having refused to consent to a chemical test in violation of *W.Va.Code* 17C–5–7 [1983], raise his voluntary intoxication as a defense in an administrative proceeding to revoke his license.

Finally, the allowance of a "too drunk to understand" defense raises serious problems of public policy. First, it would result in "the absurd result of the prosecution being deprived of valuable evidence against extremely intoxicated drivers that could be used against moderately intoxicated drivers." *Matter of Schuttler,* 262 N.W.2d 61 (S.D.1978). As a result, the extent of a driver's accountability would bear an inverse rather than a direct relation to the extent of his inebriation. *State, Department of Highways v. Normandin,* 284

Minn. 24, 169 N.W.2d 222 (1969). Indeed, it would not further any legitimate public policy to permit an intoxicated driver to retain his driving privileges "solely because, when he refused the breath test, he was too drunk to make an intelligent decision in accepting or refusing the test." *Garcia v. Department of Motor Vehicles,* 253 Or. 505, 456 P.2d 85 (1969). To permit such a defense would exempt from the statutory coverage "a class of persons whose driving is the most dangerous— those who, while not too intoxicated to drive, are nevertheless too intoxicated to respond intelligently to stimuli in their surroundings." *State, Department of Motor Vehicles v. McElwain,* 80 Wash.2d 624, 496 P.2d 963, 965 (1972). We therefore conclude that a driver's extreme intoxication at the time he refuses to submit to the chemical test may not be raised as a defense in an administrative proceeding to revoke his license for such refusal.

### III

Finally, we consider Mr. Matherly's claim that his state of extreme emotional distress rendered him incapable of understanding the nature of the officer's request and the consequences of his refusal. Much of the foregoing analysis of the "too drunk to understand" defense applies with equal force to this "too upset to understand" defense. First, *W.Va.Code* 17C–5–7 [1983] makes no provision for such a defense. Nor does the statute require that the refusal be intelligently, knowingly and willingly made. The statute requires only that the driver refuse to take the test.

Second, it must be remembered that an officer may request that a driver submit to a secondary chemical test only when he has reasonable cause to believe that the driver has been driving under the influence of alcohol, controlled substances or drugs. *W.Va.Code,* 17C–5–4 [1983]; *W.Va.Code,* 17C–5–2 [1986]. A driver's raising of the "too upset to understand" defense is tantamount to a claim that, while he was so emotionally upset that he could not intelligently respond to an officer's request to submit to a test, he took it upon himself to endanger the lives and limbs of the rest of us by driving a car. To paraphrase *McElwain, supra,* allowance of such a defense would exempt from the statutory coverage persons who drive while too upset and/or too intoxicated to respond intelligently to stimuli in their surroundings. Allowance of such a defense would not further the legislature's purpose of improving highway safety.

Were we to permit a "too upset to understand" defense while at the same time not permitting a "too drunk to understand" defense, we would impose upon the commissioner an impossible task. It would be necessary for the commissioner to determine how much of a driver's inability to understand is attributable to intoxication and how much to emotional distress. This in-depth metaphysical inquiry would doubtless require hours of psychiatric evaluation and volumes of expert testimony. Although this would create a cottage industry for underemployed psychiatrists, it would serve only to hinder the legislative purpose behind the statute. We therefore conclude that a driver's extreme emotional distress at the time he refuses to submit to the secondary chemical test may not be raised as a defense in an administrative proceeding to revoke his license for such refusal.

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is reversed, and the case remanded with directions to reinstate the Commissioner's original order.

Reversed and remanded.