617 S.E.2d 860

**Phillip S. LILLY, Petitioner Below, Appellee,**

v.

**F. Douglas STUMP, Commissioner of the West Virginia Division of Motor Vehicles, Respondent Below, Appellant.**

**No. 31945.**

Supreme Court of Appeals of West Virginia.

Submitted: March 23, 2005.

Filed: May 31, 2005.

Randy D. Hoover, Esq., Beckley, for Appellee.

Darrell V. McGraw, Jr., Esq., Attorney General, Janet E. James, Esq., Assistant Attorney General, Charleston, for Appellant.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Raleigh County entered on January 30, 2004. In that order, the circuit court reversed the revocation of the driver's license of the appellee and petitioner below, Phillip S. Lilly,[1] by the appellant, the West Virginia Department of Transportation, Division of Motor Vehicles (hereinafter, "DMV"). The DMV now appeals the reversal of the revocation of the appellee's driver's license believing that by a preponderance of the evidence there was sufficient proof to conclude the appellee had consumed alcoholic beverages and then operated a motor vehicle in the State while under the influence of alcohol. Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the Circuit Court of Raleigh County's January 30, 2004, order is reversed and this case is remanded with directions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On January 19, 2002, at approximately 12:42 a.m., Deputy L.D. Lilly, an officer of the Raleigh County Sheriff's Department, responded to a 911 call to investigate a complaint of a vehicle in the backyard of a residence in Princewick, Raleigh County, West Virginia. When Deputy Lilly arrived at the residence from which the 911 call was placed, he observed tire tracks leading from the public road through the front yard and over several landscaping items beside the residence. Deputy Lilly said the tracks clearly led to a Chevrolet S10 truck with the headlights on that appeared to be stuck in the backyard of the residence. As Deputy Lilly approached the truck, he said the engine was running hard and the tires of the truck were spinning rapidly as the appellee was revving the accelerator.

Deputy Lilly asked the appellee, who was alone in the truck, what he was doing and the appellee responded that he had "gotten a little bit off the road and was trying to get back to the road." Deputy Lilly immediately detected the strong odor of alcohol coming from the breath of the appellee as well as the fact that he had bloodshot, glassy eyes, and spoke with slurred speech. Deputy Lilly asked the appellee to exit the vehicle and walk to the driveway of the nearby residence. When the appellee walked toward the driveway, Deputy Lilly watched him noticeably stagger.

Deputy Lilly then attempted to administer a series of field sobriety tests, consisting of: horizontal gaze nystagmus; walk-and-turn; one-leg-stand; and a preliminary test of the breath. According to Deputy Lilly, the appellee only attempted the one-leg-stand test and then refused to participate in any additional field sobriety tests. Based upon the appellee's noticeably impaired condition, his poor performance on the one field sobriety test, and his refusal to submit to additional field sobriety testing, Deputy Lilly arrested him for driving under the influence of alcohol and transported him to the Raleigh County Sheriff's Department in Beckley, West Virginia.

Once at the sheriff's office, Deputy Lilly read to the appellee a written document containing the penalties for refusing to submit to a designated secondary chemical test and informed him of the fifteen-minute time limit for refusal as required by W.Va.Code § 17C–5–4[2] and § 17C–5–7.[3] Deputy Lilly also tes-

---

1. The appellee, Phillip S. Lilly, has the same surname as the arresting officer Deputy L.D. Lilly. To avoid confusion, Phillip S. Lilly will be referred to as the appellee throughout this opinion.

2. W.Va.Code § 17C–5–4, in pertinent part, provides:

   (a) Any person who drives a motor vehicle in this state is deemed to have given his or her consent by the operation of the motor vehicle

tified that he provided a written copy of the Implied Consent Statement to the appellee and then asked him to submit to a secondary chemical test of the breath. The appellee advised Deputy Lilly that he would not submit to such a test. After twenty minutes had passed, Deputy Lilly again asked the appellee to submit to a secondary chemical test of the breath; however, for the second time, the appellee advised the deputy that he would not submit to such a test. Fifteen minutes later, Deputy Lilly asked the appellee to submit to a secondary chemical test of the breath and for the third time, the appellee refused.

On January 31, 2002, following a review of the Statement of Deputy Lilly, the DMV issued an initial Order of Revocation concurrently revoking the appellee's privilege to drive in West Virginia for ten years for Driving Under the Influence of Alcohol and Implied Consent.[4] On January 30, 2004, the Circuit Court of Raleigh County reversed the final order of the Commissioner of the DMV, thereby restoring driving privileges to the appellee. The circuit court found that the field sobriety test results had no evidentiary weight because even though Deputy Lilly had reasonable grounds and probable cause to investigate the appellee in the truck in the backyard of the residence, the deputy did not testify that he had been properly trained to administer field sobriety tests. Therefore, the circuit court concluded that Deputy Lilly failed to lay an adequate foundation for the introduction of the results of those tests. The circuit court also concluded that the

appellee was not provided with a written copy of the Implied Consent Statement containing the penalties for refusal to submit to a secondary chemical test as required by W.Va.Code § 17C–5–4 and § 17C–5–7. As such, the circuit court refused to consider the appellee's refusal to submit to the secondary chemical test after being asked to do so on three occasions by Deputy Lilly. Moreover, the circuit court found that the only evidence presented it recognized as credible was Deputy Lilly's observations that the appellee had bloodshot and glassy eyes, slurred speech, and an odor of alcohol on his breath. The circuit court, however, found that such evidence did not rise to the level of sufficient proof under the preponderance of the evidence test standard to conclude that the appellee had consumed alcoholic beverages and then operated a motor vehicle in the State while under the influence of alcohol. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the DMV is appealing an order of the Circuit Court of Raleigh County reversing its revocation of the appellee's driver's license. This Court applies the same standard of review that the circuit court applied to the DMV's administrative decision, *i.e.*, giving deference to the DMV's purely factual determinations and giving *de novo* review to legal determinations. *See Choma v. West Virginia Div. of*

---

to a preliminary breath analysis and a secondary chemical test of either his or her blood, breath or urine for the purposes of determining the alcoholic content of his or her blood.
. . . .
(e) Any person to whom a preliminary breath test is administered who is then arrested shall be given a written statement advising him or her that his or her refusal to submit to the secondary chemical test pursuant to subsection (d) of this section, will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least one year and up to life.

**3.** W.Va.Code § 17C–5–7, in pertinent part, provides:

(a) If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not

be given: Provided, That prior to such refusal, the person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life. If a person initially refuses to submit to the designated secondary chemical test after being informed in writing of the consequences of such refusal, he shall be informed orally and in writing that after fifteen minutes said refusal shall be deemed to be final and the arresting officer shall after said period of time expires have no further duty to provide the person with an opportunity to take the secondary test.

**4.** The appellee's privilege to drive a motor vehicle was also revoked by the DMV for an offense which occurred on November 29, 1993.

*Motor Vehicles*, 210 W.Va. 256, 258, 557 S.E.2d 310, 312 (2001). In Syllabus Point 2 of *Choma*, we held that: "On appeal of an administrative [decision] . . . findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong. Syllabus Point 2 (in part), *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996)." Likewise, "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syllabus Point 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

■■■ Moreover, as this Court explained in *Modi v. West Virginia Bd. of Medicine*, 195 W.Va. 230, 239, 465 S.E.2d 230, 239 (1995),

> findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. . . . Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

(citations omitted); *see also Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (explaining that "[w]e must uphold any of the [administrative agency's] factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts"). In addition, " 'The "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.' Syllabus Point 3, *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996)." Syllabus Point 2, *Webb v. West Virginia Bd. of Medicine*, 212 W.Va. 149, 569 S.E.2d 225 (2002). Thus, "[t]he scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for

that of the hearing examiner." *Martin*, 195 W.Va. at 304, 465 S.E.2d at 406.

Thus, with these standards in mind, we consider the parties' arguments.

## III.

## DISCUSSION

The DMV argues that the circuit court incorrectly determined that Deputy Lilly failed to lay an adequate foundation for the introduction of the results of his field sobriety tests and that he did not demonstrate he had been properly trained to administer such tests. The DMV states that Deputy Lilly's testimony surrounding the tests was sufficient evidence to sustain admission of his results. Deputy Lilly explained that the appellee failed the one-leg-stand test which he had properly explained and demonstrated to the appellee. He further said the appellee used his arms for balance and put his feet down and almost fell down when attempting that test. The deputy added that the appellee refused to attempt the walk-and-turn test as well as any additional field sobriety tests he offered. The DMV contends that since Deputy Lilly is a member of the Raleigh County Sheriff's Department, it may be judicially recognized that he is not a lay person with regard to his administration of the field sobriety tests. The DMV further argues that Deputy Lilly's testimony demonstrated that he went through the standardized procedure of explaining and demonstrating the tests.

Conversely, the appellee asserts that the circuit court correctly excluded the results of the field sobriety test because the arresting officer failed to lay a foundation for their admission. The appellee states that a field sobriety test certainly would be considered a technical test or a test requiring specialized knowledge as required by Rule 702 of the West Virginia Rules of Evidence.[5] Thus, the appellee argues that since Deputy Lilly did not offer any testimony or evidence as to his training and the reliability of the field sobri-

---

**5.** W.Va. Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

ety tests, the circuit court was correct in excluding them.

With regard to the Implied Consent Statement, the DMV argues that the circuit court erred in finding that: "[c]lose scrutiny of the entirety of the record leads this Court to conclude that the appellee was not provided with a written copy of the Implied Consent Statement containing the penalties for refusal to submit to a secondary test. . . ." The DMV maintains that the circuit court's finding is completely contradicted by the record. Moreover, the DMV says that it was undisputed that Deputy Lilly read and explained the Implied Consent form to the appellee, which in itself established that the appellee was presented with the Implied Consent form. The DMV adds that it was the appellee who declined to sign the form and take the test when given three separate opportunities to do so. Deputy Lilly even offered the appellee a third opportunity to sign the form and take the test even though it was not required of him by W.Va.Code § 17C–5–7(a). In that regard, the DMV points out that § 17C–5–7(a) provides:

If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not be given: Provided, That prior to such refusal, the person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life. If a person initially refuses to submit to the designated secondary chemical test after being informed in writing of the consequences of such refusal, he shall be informed orally and in writing that after fifteen minutes said refusal shall be deemed to be final and the arresting officer shall after said period of time expires have no further duty to provide the person with an opportunity to take the secondary test.

The DMV maintains that Deputy Lilly met and exceeded the statutory requirements for presenting implied consent information and opportunities to submit to the Intoxilyzer test. Conversely, the appellee argues that the West Virginia Code requires that oral and written information must be given to the

arrestee and when such information must be given. He then states that based upon the evidence of record it cannot be established whether the officer in this case complied with the requirements of W.Va.Code § 17C–5–4 and § 17C–5–7.

Next, the DMV contends that the circuit court erred in finding that there was insufficient evidence under *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984), to sustain a revocation based upon Driving Under the Influence of Alcohol. The DMV states that under *Albrecht*, the State must show, by a preponderance of the evidence, that a driver operated a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and consumed alcoholic beverages. The DMV says that such a showing was made in this case. The DMV also argues that the circuit court failed to consider all of the circumstances which led the Commissioner to find that the appellee was Driving Under the Influence of Alcohol. In response, the appellee states that the circuit court properly excluded the field sobriety and secondary chemical tests. The appellee further contends that the remaining evidence only supports that he was operating a vehicle in a residential yard and not a public street. He further maintains that when he admitted that he "had gotten a little off the road" that the record does not reflect what type of roadway to which he was referring.

■■■ After fully reviewing the evidence, we believe that the circuit court erred in reversing the DMV's revocation of the appellee's license. In Syllabus Point 2 of *Albrecht*, this Court wrote:

Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

In this case, Deputy Lilly followed the vehicle tracks into the backyard where the appellee was still sitting in the truck revving the engine and spinning his wheels trying to get back on the public roadway. Initially, the

circuit court concluded that Deputy Lilly did not lay a proper foundation for the field sobriety tests and thereafter refused to afford any evidentiary weight to those tests. The circuit court failed to mention in its January 30, 2004, order, however, that the appellee flatly refused to perform or attempt any additional tests after he failed miserably on the first field sobriety test offered by the officer. Moreover, the appellee's noncompliance with Deputy Lilly's initial investigation of his impairment was only a precursor to the appellee's further refusals of the secondary chemical test offered at the sheriff's office. In addition, with regard to the appellee's refusal of the secondary chemical test, we find the circuit court's conclusion that: "Close scrutiny of the entirety of the record leads this Court to conclude that [the appellee] was not provided with a written copy of the Implied Consent Statement," to be completely unsupported by the record. In fact, the only evidence of record on this issue was Deputy Lilly's testimony which clearly demonstrated that the officer gave the Implied Consent form to the appellee. As there was no testimony in conflict with the officer, we see no reason to contradict his testimony. Furthermore, upon a thorough review of the record, we believe that Deputy Lilly went above and beyond his required duties both in the backyard where the appellee refused several field sobriety tests and at the sheriff's office when he offered the secondary chemical test to the appellee on three separate occasions.

■ In this case, the appellee refused most of the field sobriety tests, three separate secondary chemical tests, reeked of alcohol, slurred his words, and stumbled when he walked. In Syllabus Point 4 of *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996), we held that: " 'Substantial evidence' requires more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If an administrative agency's factual finding is supported by substantial evidence, it is conclusive." We find that there was substantial evidence for the revocation of the appellee's driver's license and conclude that the DMV's findings were not clearly wrong in light of all of the probative and reliable evidence in the record. We therefore reverse the circuit court's decision.

## IV.

## CONCLUSION

Based upon the foregoing, we hereby reverse the Circuit Court of Raleigh County's January 30, 2004, reversal of the DMV's revocation of the appellee's driver's license. We further remand the matter to the Circuit Court of Raleigh County for the immediate entry of an order reinstating the DMV's administrative decision revoking the appellee's driver's license.

Reversed and remanded with directions.