694 S.E.2d 639

James L. GROVES, III, Petitioner
Below, Appellee

v.

Joseph CICCHIRILLO, Commissioner,
West Virginia Division of Motor Vehi-
cles, Respondent Below, Appellant.

No. 35132.

Supreme Court of Appeals of
West Virginia.

Submitted March 3, 2010.

Decided May 6, 2010.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, WV, for Petitioner.

J. Thomas Madden, II, Glen Dale, WV, for Respondent.

PER CURIAM:

This is an appeal by the respondent below, Joseph Cicchirillo, Commissioner of the Division of Motor Vehicles [1] (hereinafter "DMV" or "Commissioner"), of the February 12, 2009, final order of the Circuit Court of Marshall County in an administrative agency appeal. By the terms of the February 12, 2009, order, the revocation of the driver's license of the petitioner below, James L. Groves (hereinafter "Appellee"), for driving under the influence (hereinafter "DUI") was reversed. The reason for the reversal of the license revocation centers on the lower court's finding that the Commissioner's revocation order was not entirely based on findings established through the testimony of the charging officer at the DMV revocation hearing. Upon consideration of the parties' briefs and arguments in this proceeding, the record accompanying the appeal, as well as the pertinent authorities, the circuit court's order is reversed and DMV's administrative order revoking Appellee's driver's license is reinstated.

## I. Factual and Procedural Background

A deputy of the Marshall County Sheriff's Department responded to a report of a motor vehicle accident occurring shortly after midnight on February 19, 2008. The deputy testified at the DMV hearing that he did not immediately discover the vehicle involved in the accident when he arrived at the scene because the car had "skidded over the guardrail." No other vehicles were apparently involved in the incident. The deputy found the Appellee walking along the same side of the road where his car was discovered. The vehicle information section of the West Virginia D.U.I. Information Sheet (hereinafter "DUI Information Sheet") completed by the deputy and appearing in the record indicates that Appellee owned the car involved in the accident, and lists the license plate number and vehicle identification number among the identifiers of the vehicle. In the "Personal Contact" section of the DUI Information Sheet the deputy indicated he observed Appellee having bloodshot and glassy eyes, slurred speech, and being unsteady while walking to the road.

The DUI Information Sheet further indicates that the deputy conducted a horizontal gaze nystagmus (hereinafter "HGN") test on Appellee at the accident site. According to the officer's testimony at the DMV hearing, after he recorded the results of the HGN test he decided to transport Appellee to the sheriff's office to complete the field sobriety tests because of the inclement weather conditions that night. Appellee was unsuccessful in completing a one-leg stand test conducted at the sheriff's office. Afterward, Appellee agreed to submit to the secondary chemical test authorized for use by the Marshall County Sheriff's Department [2] by signing an Implied Consent Statement. As reflected in the DUI Information Sheet, the deputy had observed Appellee for twenty minutes before conducting the secondary chemical test of the Intoximeter. The deputy also noted on the form that prior to administering the test to Appellee an individual disposable mouthpiece was placed on the tube of the meter and the gas reference standard indicated the Intoximeter was functioning properly. The printout of the Intoximeter in the record indicates a blood alcohol content (hereinafter "BAC") of .218.

The deputy apprised DMV of Appellee's arrest for DUI by submitting the completed DUI Information Sheet, signed Implied Consent Statement and Intoximeter printout. [3]

---

**1.** Joseph Cicchirillo was the DMV Commissioner when this action was initiated. Joe E. Miller is the current DMV Commissioner.

**2.** The record reflects that the secondary chemical test recognized in Marshall County is the Intoximeter EC/IR II.

**3.** See W.Va.Code § 17C–5A–1(b) (reports and tests law-enforcement officers investigating DUI

After reviewing these documents, DMV issued an initial order on March 4, 2008, revoking Appellee's privilege to drive. W.Va.Code § 17C–5A–1(c). Appellee timely requested an administrative hearing and informed DMV he intended to challenge the results of the secondary chemical test.

During the May 28, 2008, hearing, the hearing examiner asked the deputy to identify each of the documents he had submitted to DMV in connection with Appellee's accident and DUI arrest. The deputy testified that the documents included the DUI Information Sheet, signed Implied Consent Statement and the Intoximeter printout. He further attested to the truth and accuracy of the reports. The substantive portion of the deputy's testimony at the hearing was made in response to the hearing examiner's question of what caused the deputy to complete the documents and submit them to DMV. The deputy stated:

> I received a complaint of a vehicle that had crashed on Roberts Ridge. I actually drove by once. I didn't see it. The ambulance saw it before I did. I came back by. At that time I noticed a vehicle had went over, that skidded over the guardrail on the other side. I got out and made contact with Mr. Groves. I asked him if he'd been drinking. He said coffee is what he answered.[4] I assumed that he might be drinking (Inaudible.) the accident. I performed the horizontal gaze nystagmus test on the scene right there. Due to the weather conditions and the road way conditions and such I went ahead and transported him back to Marshall County Sheriff's Office to finish the tests. I recall I might have given him the nine step walk-

and-turn test. I don't recall if I did or not due to the area. There's a line through it, so apparently I didn't. [..] (Inaudible.) at the office I can't[ ] have somebody walk there. I did however perform the one-legged stand test. Based on that I felt he failed this test and then had him submit to the EC/IR [Intoximeter] test. I gave him a citation and he was released. He was further processed, fingerprinting and photograph.

Appellee and his counsel attended the hearing, but the deputy was not cross-examined nor was any testimony or documentary evidence proffered on Appellee's behalf. After considering the results of the hearing along with the evidence in the DMV file in this case [5], the Commissioner reinstated the initial revocation by final order dated September 22, 2008.

Appellee appealed the DMV final order to the circuit court. In the February 12, 2009, final order, the circuit court found that DMV's "final order ... [did] not comport with the testimony and evidence adduced at the ... final hearing." The order reflects the lower court's finding that the "automatic admission" of the Intoximeter printout into evidence at the DMV hearing was in effect foreclosed by Appellee's timely challenge to the Intoximeter test results.[6] The order went on to relate that the deputy's testimony did not provide a proper foundation for the admissibility of the Intoximeter results, nor did the testimony establish that the deputy had observed Appellee for twenty minutes before the test was administered or that a sterile disposable mouthpiece was utilized in the testing. The lower court also observed

---

offenses are required to file with DMV).

**4.** The "Personal Contact" portion of the DUI Information Sheet notes that Appellee stated to the deputy, "Sir, I done drank too much."

**5.** As reflected in the record certified with the present appeal, the DMV supplied the circuit court with the record the Commissioner relied on to issue the final revocation order. The following documents were certified to the circuit court by DMV: September 22, 2008, Initial Order of Revocation for DUI; completed DUI Hearing Request Form; Letter from Appellee's attorney informing DMV of his representation; scheduling notices for the DMV hearing; list of

agencies which designated the Intoximeter EC/IR II as a secondary chemical test; Bureau of Public Health certification of the deputy's training and certification for administering the Intoximeter EC/IR II; Intoximeter printout; DUI Information Sheet; Implied Consent Statement; DMV computer printout of Appellee's driver history with suspension data; transcript of the DMV hearing and Final Order of Revocation for DUI.

**6.** *See* 91 C.S.R. 1 § 3.4.2 (providing that at DMV revocation hearings unchallenged results of a secondary chemical test are considered stipulated for evidentiary purposes.)

that the deputy offered no testimony regarding the BAC test, including whether Appellee failed the test.

Similarly, the lower court found that although the deputy testified at the hearing that he had administered the horizontal gaze nystagmus test on Appellee, the deputy did not say anything about Appellee's performance during the test or whether or not Appellee passed or failed that test. The court further noted that the testimony did not establish that the deputy had observed Appellee driving a motor vehicle.

The lower court's order concluded that

after a review of the record, including, but not limited to the transcript of the final administrative hearing and the arresting officer's testimony, that the arresting officer did not provide sufficient evidence to prove by a preponderance ... that the petitioner drove a motor vehicle while under the influence of alcohol.

Based upon these findings and conclusions, the lower court reversed DMV's final order of revocation. DMV subsequently filed its petition for appeal of the February 12, 2009, order with this Court, for which review was granted on September 3, 2009.

## II. Standard of Review

■ This proceeding involves an appeal by DMV of a circuit court order reversing a final revocation order of the administrative agency. The standard a circuit court is to apply when reviewing an administrative agency order was set forth in syllabus point two of *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of West Virginia Human Rights Com'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983), as follows:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In

violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

In the pending case, the lower court reversed the order of the administrative agency on the ground that the revocation was clearly wrong in view of the evidence.

■ Our review of a circuit court's decision involving an administrative agency order proceeds under the standard announced in *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). In syllabus point one of *Muscatell* we held that "[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." This deference extends to evidentiary findings made at administrative hearings. Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. Of Envtl. Protec.,* 191 W.Va. 134, 443 S.E.2d 602 (1994) ("Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong."). We undertake our review with these parameters in mind.

## III. Discussion

The principal determination to be made at a DMV hearing regarding revocation of a driver's license for DUI is "whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs." W.Va.Code § 17C–5A–2(e). At the heart of this appeal is the circuit court's implicit determination that the license revocation could only be upheld if the various findings regarding proof of Appellee driving under the influence contained in DMV's final revocation order were supported by the testi-

mony of the arresting officer at the DMV hearing.

DMV argues that there was sufficient evidence in the record to support the revocation when the deputy's testimony is considered in conjunction with the information contained in the documents appearing in the DMV record, particularly the DUI Information Sheet, Implied Consent Statement and Intoximeter printout. According to DMV, the lower court's position is at odds with the Administrative Procedures Act as interpreted in *Crouch v. West Virginia Division of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006).

The *Crouch* case was an appeal from a circuit court's reversal of a license revocation wherein the lower court found that DMV had failed to establish jurisdiction. The circuit court in that case had based its decision solely upon the testimony of an arresting officer without considering the evidence of jurisdiction contained in a sworn document entitled "Statement of Arresting Officer" that was part of the DMV hearing record. In addressing sufficiency of evidence in *Crouch*, we examined the relevant provision of the Administrative Procedures Act and observed:

> Without a doubt, the Legislature enacted W.Va.Code § 29A–5–2(b) with the intent that it would operate to place into evidence in an administrative hearing "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself...." W.Va.Code § 29A–5–2(b). Indeed, admission of the type of materials identified in the statute is mandatory.

*Id.* at 76, 631 S.E.2d at 634. We further noted in *Crouch* "that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a re-

buttable presumption as to its accuracy." *Id.* at 76 n. 12, 631 S.E.2d at 634 n. 12.

In the present case, no effort was made to rebut the accuracy of *any* of the records, including the DUI Information Sheet, Implied Consent Statement or Intoximeter printout which were authenticated by the deputy and admitted into the record at the DMV hearing. Nonetheless, the lower court's order contains an explanation as to why the court determined that the Intoximeter printout had to be disregarded. The court found that Appellee had filed a timely challenge to the Intoximeter results and by so doing prevented automatic admission of the results of the test into evidence.[7] However, the record does not reflect that Appellee actually raised any challenge to the Intoximeter test. The only thing in the record that Appellee filed regarding the Intoximeter test was a *notice of intent to challenge* the test results. The filing of this notice simply negated the presumption that the document would be considered as stipulated by the parties, thus leaving the matter open for challenge at the hearing. 91 C.S.R. 1 § 3.4.2; W.Va.Code § 17C–5A–2(e). Our review of the record shows that Appellee neglected to follow through on raising any challenge to the Intoximeter results—he never pointed to any particular concern, problem or irregularity regarding the administration of the Intoximeter test or performance of the equipment. It is clear from the transcript of the DMV hearing that no cross-examination was conducted of the deputy about his qualifications for administering the Intoximeter, and no evidence was offered refuting the reliability of the Intoximeter results due to inadequate preparation by the deputy or malfunction of the equipment.

It is noteworthy that DMV's final order of revocation does not expressly indicate reliance on the Intoximeter results in order to reach the conclusion that Appellee was driving under the influence. Although West Virginia Code § 17C–5A–1(c) requires that where a secondary chemical test has been

---

7. Even if the Intoximeter printout were inadmissible, proof of being under the influence of alcohol could be established in other ways. License revocation for DUI pursuant to West Virginia Code § 17C–5A–1(c) is not limited to instances

when there is proof that a person failed a secondary chemical test. *See* Syl. Pt. 1, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984); Syl. Pt. 4, *Coll v. Cline*, 202 W.Va. 599, 505 S.E.2d 662 (1998).

administered the Commissioner must consider the results of that test in making the revocation decision, but the statute does not require the Commissioner to actually rely on such test results to determine whether the act of driving under the influence occurred. In instances of administrative license revocation, our decisions have clearly stated that there is no statutory requirement that proof of a motorist driving under the influence of alcohol be established by secondary chemical test results. *See* Syl. Pt. 1, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984); Syl. Pt. 4, *Coll v. Cline.* What we have consistently held is that

> [w]here there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol. Syllabus Point 2, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984). Syllabus Point 2, *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997).

Syl. Pt. 4, *Lowe v. Cicchirillo*, 223 W.Va. 175, 672 S.E.2d 311 (2008).

Appellee claims, nonetheless, that the lower court's reversal of the revocation order was proper because the officer's testimony did not establish any of the essential elements necessary to prove that he was driving a motor vehicle while under the influence of alcohol. He maintains that documentary evidence standing alone cannot uphold the license revocation pursuant to the holding of this Court in *Ours v. West Virginia Department of Motor Vehicles*, 173 W.Va. 376, 315 S.E.2d 634 (1984). Appellee's reliance on *Ours* is misplaced. We concluded in *Ours*[8] that documentary evidence could not be the sole source upon which the DMV Commissioner based a decision under the circumstances in that case. The ruling was made strictly in the context of a particular financial responsibility statute—a statute which was subsequently repealed by the Legislature in 1988. *Ours* was not decided with regard to statutes governing administrative procedures for revoking drivers' licenses for DUI and hence is inapplicable to the case currently before us. Even if we were to find the *Ours* holding applicable to revocation hearings under Chapter 17A, Article 5A of the West Virginia Code, it is clear from the final revocation order in this case that the Commissioner relied on more than documentary evidence to reach the conclusion that Appellee drove a motor vehicle while under the influence of alcohol.[9] Furthermore, it is readily apparent from the officer's testimony that his statements verified various facts in the documents which had been introduced into evidence.[10]

■ DMV's final assignment of error regards the lower court finding that there was no evidence, testimonial or documentary, that established Appellee had driven a car on the night of the accident. DMV admits that it is clear from the record that the deputy came on the scene after the accident had occurred and Appellee was not in the car when the deputy arrived. There also is no indication

---

8. Syllabus point one of *Ours* in its entirety reads as follows:

> Reports prepared by a police officer investigating an automobile accident and reports prepared by persons involved in such accident may not be the sole evidence upon which the Commissioner of the Department of Motor Vehicles bases a determination, after a suspension hearing conducted pursuant to W.Va. Code, 17D–3–15 [1972] that there is a "reasonable possibility of judgment" against a driver or owner of a vehicle involved in the accident and from whom security for that accident has been required pursuant to the provisions of chapter 17D, article 3 of the West Virginia Code.

9. The DMV final order expressly indicates:

> [I]t is determined the record taken in its entirety demonstrates the Respondent elected not to present a defense supported by sufficient evidence to rebut the presumption created by the DUI Information Sheet and testimony of the Arresting Officer. As a result, after due consideration of the evidence presented, the record supports a finding by a preponderance of the evidence that the Respondent operated a motor vehicle in this State while under the influence of alcohol.

10. The substantive testimony of the deputy is recited at pp. 476–77, 694 S.E.2d at pp. 641–42, *supra*.

in the record that there were any witnesses to the accident. DMV maintains, however, that it is not necessary for an arresting officer to have observed someone operating a motor vehicle in order to charge someone with driving under the influence. We agree.

This Court has recognized that statutory administrative procedures for revoking a driver's license for DUI are not limited to instances where an officer sees a person operating a vehicle while under the influence. Our holding in syllabus point three of *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997), specifically states that:

> W.Va.Code § 17C–5A–1a(a) (1994) [11] does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

In the case now before us, the hearing examiner was presented with evidence which showed that the deputy had reasonable grounds to believe that Appellee was the driver of the vehicle involved in the February 19, 2008, accident. *See*, Syl. Pt. 3, *Cain v. West Virginia Division of Motor Vehicles*, 225 W.Va. 467, 694 S.E.2d 309 (2010). It was established in the record that Appellee owned the vehicle and that the deputy came upon Appellee walking unsteadily along the berm of the road on the opposite side of the guardrail from where the car rested. Appellee was compliant during the investigation process and provided the deputy with his driver's license and vehicle registration information. Moreover, no one else was discovered at the scene of the accident and there was no evidence offered that someone else was driving the vehicle on the night of the accident. Significantly, these facts were not contested at the administrative hearing. It is reasonable to conclude under these circumstances that Appellee was the driver of the vehicle involved in the accident.

As related at the outset of our discussion, the lower court reversed DMV's final order of revocation in this case on the grounds that the revocation was clearly wrong in view of the evidence. However, the lower court's view of the evidence revealed a preference for testimonial evidence over documentary evidence. Our law recognizes no such distinction in the context of drivers' license revocation proceedings. The DMV hearing examiner was presented with evidence that on the night of the accident, Appellee was found walking along the same side of a road where his car was found. The car came to rest along the side of the road after going over a guardrail. The record further established that Appellee was unsteady on his feet when the deputy approached him and that the deputy observed Appellee's speech was slurred and his eyes were bloodshot and glassy. In addition, the evidence reveals that Appellee was given two field sobriety tests, the HGN test and the one-leg stand test. The results from these tests were recorded by the deputy, showing that Appellee had failed in his performance. We find that these facts provide sufficient evidence to support the conclusion that Appellee was driving a motor vehicle while under the influence of alcohol, with or without the Intoximeter results, and thus represent an adequate basis for the Commissioner to revoke Appellee's driver's license. Consequently, we reverse the February 12, 2009, order of the Circuit Court of Marshall County.

## IV. Conclusion

Based upon the foregoing, the February 12, 2009, final order of the Circuit Court of Marshall County is reversed, and the September 22, 2008, Final Order of the Commissioner of the West Virginia Division of Motor is reinstated.

Reversed.

---

11. Although West Virginia Code § 17C–5A–1a was subsequently amended in 2004, those amendments have no bearing on the conclusion reached in syllabus point three of *Carte*.