# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Steven O. Dale, Acting Commissioner**
**Of the West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**FILED**

April 10, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0429** (Kanawha County 12-AA-130)

**Tammy Reed,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Steven O. Dale, Acting Commissioner of the Division of Motor Vehicles (hereinafter "DMV"), appeals the Circuit Court of Kanawha County's March 18, 2013, order affirming the Office of Administrative Hearing's (hereinafter "OAH") reversal of a portion of respondent's (hereinafter "Ms. Reed") driver's license revocation. Petitioner asserts that the circuit court erred in 1) failing to give evidentiary value to documentary evidence establishing that implied consent requirements were met; and 2) imposing a non-existent duty on the DMV to prove that Ms. Reed understood the implied consent law.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the findings of fact of the circuit court are clearly wrong. As more fully explained below, the Court finds that the circuit court disregarded this Court's holdings regarding the proper weight to be given documentary evidence in a drivers' license revocation proceeding and further imposed a non-existent requirement to sustain an implied consent revocation. Accordingly, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

In the early morning hours of September 4, 2010, employees of a Go-Mart in Mercer County notified Deputy G. C. Paitsel (hereinafter "Deputy Paitsel") of the Mercer County Sheriff's Department that Ms. Reed had just left the Go-Mart and appeared to be intoxicated. Deputy Paitsel observed Ms. Reed make a left turn without signaling and turn into an automatic car wash the wrong direction. Deputy Paitsel observed Ms. Reed unsteadily exit her vehicle, stagger as she walked toward him, smelling of alcohol, with blood shot eyes and slurred speech. Ms. Reed was rude,

1

belligerent, and defiant; Deputy Paitsel observed empty containers of alcohol in her vehicle. He placed her under arrest and transported her to the Bluefield City Police Department where he administered three field sobriety tests which she failed. Deputy Paitsel read Ms. Reed the implied consent statement required by West Virginia Code § 17C-5-7(a) (2010) warning her that refusal to take a secondary chemical test would result in a revocation of her license for 45 days to life.[1] The DUI Information Sheet completed by Deputy Paitsel indicated that he provided Ms. Reed a written copy of the implied consent statement as well.[2] Ms. Reed refused the Breathalyzer test.

Based on the Statement of the Arresting Officer, the DMV revoked Ms. Reed's license for six months for driving under the influence and one year for the implied consent violation, to run concurrently. At the hearing before the OAH, Ms. Reed argued that the evidence presented by the DMV was insufficient to sustain the implied consent revocation because there was no evidence presented 1) that Ms. Reed was given a written statement of the implied consent law; and 2) that she understood the implied consent law. With regard to the written copy of the implied consent statement, Ms. Reed argued that Deputy Paitsel did not testify that he gave her a copy and that no copy of the written implied consent statement was in the DMV's file.[3] Ms. Reed further noted that Deputy

---

[1] During his narrative testimony, Deputy Paitsel stated, "I read her the implied consent and then asked her if she wished to take the Breathalyzer." At no point did he testify, *nor was he directly asked*, whether he gave her a written copy of the implied consent statement as well. At most, Deputy Paitsel was asked if he had a copy of the implied consent with him, as none appeared in the DMV's administrative file. *See* n. 3, *infra*. Ms. Reed did not testify; therefore, there was no evidence presented that Deputy Paitsel did *not* provide her a copy.

[2] The DUI Information Sheet contains a check-marked box which states "IMPLIED CONSENT READ AND *COPY PROVIDED TO SUBJECT*." (emphasis added). The DUI Information Sheet is signed by Deputy Paitsel and contains the following warning: "The signing of this statement constitutes an oath or affirmation that the statements are true and that any copy filed is a true copy. Be advised that to willfully sign a statement containing false information concerning any matter or thing material or not material is false swearing and is a misdemeanor."

[3] Deputy Paitsel testified as follows:

> Q. On the breath test, operational check list you marked off that the implied consent was read and a copy provided to the subject. Do you have a copy of that, because none has been filed as far as the implied consent form that you say you provided to her?
>
> A. I turn everything in. I'm not sure. I did not bring a copy with me, no.
>
> Q. The court may correct me if I'm wrong, but I don't believe there is a copy of the implied consent in the file. At least I didn't get one.
>
> A. I don't see the report.

2

Paitsel had testified that he could not recall if Ms. Reed expressed understanding of the implied consent law.[4]   The OAH agreed that the absence of a file copy of the written implied consent statement, along with the absence of evidence that she understood the warning, warranted reversal of the implied consent revocation; the DUI revocation was affirmed.   Upon the DMV's appeal to the circuit court, the court agreed with the OAH's rationale and affirmed the OAH's reversal of the one-year implied consent revocation. This appeal followed; the DUI portion of the revocation is not on appeal.[5]

> This Court has held that
>
> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).   West Virginia Code § 17C-5-7(a) provides for revocation of a driver's license for failure to submit to a secondary chemical test, in pertinent part as follows:

> If any person under arrest as specified in section four [§ 17C-5-4] of this article refuses to submit to any secondary chemical test, the tests shall not be given: *Provided*, That prior to the refusal, the person is given an *oral warning and a written statement* advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life . . . .   The officer shall, within forty-eight hours of the refusal, sign and submit to the Commissioner of Motor Vehicles a written statement of the officer that . . .  (4) the person was given a *written statement* advising him or her that his or her license to operate a motor vehicle in this state

---

[4] Deputy Patisel testified:

> Q.   Did she acknowledge that she understood it, if you can recall?
>
> A.   I don't recall.

[5] Ms. Reed did not file a substantive response to the DMV's petition before the circuit court, but rather, merely moved to dismiss on service grounds for the DMV's failure to serve the petition via certified or registered mail.   There was no ruling on this motion below, nor did Ms. Reed cross-assign this issue as error.   Accordingly, this issue has been waived.

would be revoked for a period of at least forty-five days and up to life if he or she refused to submit to the secondary test finally designated in the manner provided in section four of this article. . . . Upon receiving the statement the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state for the period prescribed by this section.

(emphasis added). As such, to sustain an "implied consent" revocation, one of the requirements is that the officer provide *oral* and *written* warning that refusal to submit to the secondary chemical test will result in revocation. It is undisputed that the only evidence admitted in this case that Ms. Reed was given a *written* warning is the notation on the DUI Information Sheet that the implied consent form was "read and *copy provided to subject*." (emphasis added). During his live testimony, Deputy Paitsel testified only that he read the implied consent statement to Ms. Reed. Unquestionably, however, the DUI Information Sheet is admissible, affirmative evidence of its contents:

> In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b)(2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002).

Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006). Moreover, West Virginia Code § 29A-5-2(b) (the "State Administrative Procedures Act") provides that "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case[.]"

In this case, Ms. Reed did not contend, nor did the OAH or circuit court conclude, that the DUI Information Sheet was not admissible; rather, both apparently took the position that Deputy Paitsel's live testimony—which was *silent* on whether he gave Ms. Reed a written copy of the implied consent statement—was of greater value than the documentary evidence which affirmatively indicated that Ms. Reed was provided a copy. However, under similar circumstances, this Court has admonished a lower court for such an approach: "[T]he lower court's view of the evidence revealed a preference for testimonial evidence over documentary evidence. Our law recognizes no such distinction in the context of drivers' license revocation proceedings." *Groves v. Cicchirillo*, 225 W. Va. 474, 481, 694 S.E.2d 639, 646 (2010).

We acknowledge that the fact that the DUI Information Sheet was admissible "does not preclude [its] contents . . . from being challenged during the

4

hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy." *Crouch,* 219 W. Va. at 76 n.12, 631 S.E.2d at 634 n.12. However, to the extent that Ms. Reed contends that she sufficiently "challenged" the DUI Information Sheet on the issue of being given a written implied consent statement, her evidence is lacking. As noted above, Ms. Reed did not testify, nor was there any other affirmative evidence, that she was *not* given a written implied consent statement to contradict the DUI Information Sheet. *See Lilly v. Stump,* 217 W. Va. 313, 319, 617 S.E.2d 860, 866 (2005) (reversing circuit court's reversal of license revocation where there was "no testimony in conflict with the officer" regarding provision of implied consent form to driver); *Dale v. Odum and Doyle,* No. 12-1403 (W. Va. February 11, 2014) (reversing circuit court's reversal of license revocation where driver failed to rebut evidence contained solely in DUI Information Sheet). Rather, all her counsel established is that there was no *copy* of the statement Deputy Paitsel gave Ms. Reed in the DMV's administrative file. However, the statute does not require that a copy of the written statement be admitted into evidence; this argument has previously been rejected by this Court. *See Gibbs v. Bechtold,* 180 W. Va. 216, 219, 376 S.E.2d 110, 113 (1988) ("Ms. Gibbs also asserts that the record does not support the administrative decision because the Implied Consent form was never offered or admitted into evidence during the administrative hearing. We find no merit in this argument. The record contained sufficient probative evidence from which the Commissioner could conclude that the form had been read to Ms. Gibbs."). Accordingly, the circuit court's conclusion that there was insufficient evidence to establish that Ms. Reed was given a written copy of the implied consent warning was clearly wrong.

As additional grounds for reversal of the revocation, the OAH and circuit court further found that the DMV failed to produce sufficient evidence that Ms. Reed "understood" the implied consent statement. No authority for this proposition has been supplied by Ms. Reed or cited by the OAH or circuit court below. In fact, this Court has twice rejected this perceived requirement in *In Re Matherly*, 177 W. Va. 507, 354 S.E.2d 603 (1987) and *Gibbs,* 180 W. Va. 216, 376 S.E.2d 110. In *Matherly*, the driver argued he was "too upset" to understand the implied consent request, to which he did not respond. 177 W. Va. at 510, 354 S.E.2d at 606. The Court held:

> When the requirements of *W. Va. Code*, 17C-5-7 [1983] have otherwise been met, and a driver refuses to or fails otherwise to respond either affirmatively or negatively to an officer's request that he submit to a blood alcohol content test, the driver's refusal or failure to respond is a refusal to submit within the meaning of *W. Va. Code*, 17C-5-7 [1983].

Syl. Pt. 1, *Id.* The *Matherly* Court further explained,

> *W. Va. Code* 17C-5-7 [1983] makes no provision for such a [lack of understanding] defense. Nor does the statute require

5

that the refusal be intelligently, knowingly and willingly made. The statute requires only that the driver refuse to take the test. We will not engraft onto the statute a specific intent requirement where it is apparent that none was intended by the legislature.

*Id.* at 509, 354 S.E.2d at 605. In *Gibbs*, the driver argued that she was "unable to comprehend and respond" to the Trooper's request that she submit to a blood alcohol test. 180 W. Va. at 218, 376 S.E.2d at 112. Citing to *Matherly*, this Court noted that "[w]e refused in *Matherly* to engraft a specific intent requirement by holding that it must be proved that the refusal to take the test was knowingly made." *Id.* Accordingly, the circuit court's conclusion that the lack of evidence of Ms. Reed's understanding of implied consent warranted reversal of the revocation was erroneous.

For the foregoing reasons, we reverse that portion of the circuit court's March 18, 2013, order upholding the OAH's reversal of the implied consent revocation and remand for entry of an order reinstating Ms. Reed's implied consent revocation pursuant to West Virginia Code § 17C-5-7(a).

Reversed and remanded with directions.

**ISSUED**: April 10, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II