631 S.E.2d 628

Jackie L. CROUCH, Petitioner Below, Appellee,

v.

WEST VIRGINIA DIVISION OF MOTOR VEHICLES, Respondent Below, Appellant.

No. 32843.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2006.

Decided May 24, 2006.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, Attorneys for the Appellant.

Benny G. Jones, Beckley, Attorney for the Appellee.

DAVIS, Chief Justice:

The West Virginia Division of Motor Vehicles (hereinafter referred to as "the DMV") appeals an order of the Circuit Court of

Raleigh County that reversed a license revocation order entered by the DMV Commissioner after Jackie L. Crouch (hereinafter referred to as "Ms. Crouch"), appellee herein and petitioner below, was arrested for driving under the influence of alcohol (hereinafter referred to as "DUI"). The Circuit Court reversed the license revocation based upon its conclusion that a document titled "STATEMENT OF ARRESTING OFFICER," which comprised the sole evidence establishing that the arresting officer possessed jurisdiction to arrest Ms. Crouch for DUI, had been improperly admitted into evidence during the DMV administrative hearing. Because we find that the "STATEMENT OF ARRESTING OFFICER" was properly admitted under W. Va.Code § 29A–5–2(b) (1964) (Repl.Vol.2002), we reverse the order of the Circuit Court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 6, 2003, Ms. Crouch was arrested by Officer J.M. Kerr of the Mabscott City Police Department (hereinafter referred to as "Officer Kerr") and charged with second offense DUI. According to the testimony offered by Officer Kerr at a hearing before William F. Cox, Hearing Examiner for the DMV, shortly after 1:00 a.m. on the morning of June 6, 2003, Officer Kerr observed a Kia Sportage vehicle traveling on Route 16. According to Officer Kerr's testimony, the events occurred as follows:

I observed her traveling down on Route 16, drop off the road side to the right hand side of the road into the ditch. As she made a right hand turn on to [sic] Ridge Street then I observed her weaving approximately four to five times. I followed her. She made a left hand turn on to [sic] Walker. Upon making the left hand turn on to [sic] Walker she didn't use her turn signal. When she made the turn up on to [sic] Walker, she went into the ditch and about struck the pole that was on the side

of the road to the right. She went into the ditch and stayed in the ditch. She did not come back out of the ditch driving. Then I made, performed a traffic stop using blue lights and siren. Upon making the traffic stop, I walked to the driver's side window and advised Ms. Crouch why she was stopped. I asked to see her driver's license, registration. I noticed a strong odor of an alcoholic beverage coming from inside the vehicle. I asked Ms. Crouch had she been drinking. She advised me she'd been drinking a few. Upon talking with her, I smelled a strong odor of alcoholic beverage coming from her breath. Then I asked Ms. Crouch to step out of the vehicle to perform field sobriety tests. Ms. Crouch refused all field sobriety tests and stated that she pleads no contest. Then I give [sic] Officer Walters a call and he arrived on scene. Ms. Crouch was again asked to step out of the vehicle to perform field sobriety tests which then she refused. After speaking with her, she consented to take the PBT test[1] which was ran by Chief Walters which she failed. Then we asked her to take field sobriety tests one more time. She refused. Then I had her step out of the vehicle. Then she couldn't stand on her own. Myself and Officer Walters had to help her back to my car which I placed her under arrest for suspicion of DUI. Upon arriving at Beckley Police Department she was read her *Implied Consent,* had her sign and given a copy. She refused to take the Intoxilyzer. We waited approximately twenty minutes after which time she was asked again to take the Intoxilyzer in which she refused. Officer Walters printed off the Intoxilyzer ticket. She was given a copy and transported to the Southern Regional Jail.

(Footnote added).

Subsequent to the events described above, Officer Kerr completed a form entitled "STATEMENT OF ARRESTING OFFICER," as described in W. Va.Code § 17C–5A–1(b) (2004) (Repl.Vol.2004),[2] and submit-

---

**1.** "PBT test" refers to a Preliminary Breathalyzer Test.

**2.** W. Va.Code § 17C–5A–1(b) directs that

Any law-enforcement officer arresting a person for an offense described in section two [§ 17C–5–2], article five of this chapter or for an offense described in a municipal ordinance

ted the form to the DMV to notify it that Ms. Crouch had been arrested for DUI and that she had refused to submit to a secondary chemical test, the breathalyser test.[3] Thereafter, the DMV issued an "OFFICIAL NOTICE—ORDER OF REVOCATION," dated July 3, 2003, which informed Ms. Crouch of the revocation of her privilege to drive in West Virginia. Ms. Crouch's driving privilege was revoked for a period of one year due to her refusal of the secondary chemical test, and for a concurrent period of six months for driving under the influence. The revocation was to become effective on August 7, 2003.[4] By letter dated July 23, 2003, Ms. Crouch requested an administrative hearing to challenge the revocation of her privilege to drive in West Virginia. The requested administrative hearing was held on December 9, 2003, before William F. Cox, a hearing examiner for the DMV (hereinafter "Hearing Examiner Cox" or "Mr. Cox"). Ms. Crouch was represented at this hearing by attorney Benny G. Jones (hereinafter "Mr. Jones").

Following the hearing, Hearing Examiner Cox submitted proposed findings of fact and conclusions of law, which were adopted by F.

Douglas Stump, then Commissioner of the DMV (hereinafter "the Commissioner"), as his final order. The findings of fact in the final order rendered by the Commissioner expressly found that Officer Kerr was on patrol in the city limits of Mabscott, Raleigh County, West Virginia, at the time he observed Ms. Crouch and proceeded to place her under arrest, and that Ms. Crouch "was placed under arrest in Mabscott, Raleigh County, West Virginia."

The Commissioner ultimately concluded that "[s]ufficient evidence was presented to show that the Respondent drove a motor vehicle in this state while under the influence of alcohol on June 6, 2003." Accordingly, the Commissioner ordered that Ms. Crouch's "privilege to drive a motor vehicle be revoked for a period of six months and thereafter until all obligations for reinstatement are fulfilled."[5] With respect to Ms. Crouch's refusal of a secondary chemical test, the Commissioner concluded that "[n]o evidence was presented that the Respondent was given a written statement containing the penalties for refusal to submit to a designated secondary chemical test, required by West

---

which has the same elements as an offense described in said section shall report to the commissioner of the division of motor vehicles by written statement within forty-eight hours the name and address of the person so arrested. The report shall include the specific offense with which the person is charged and, if applicable, a copy of the results of any secondary tests of blood, breath or urine. The signing of the statement required to be signed by this subsection shall constitute an oath or affirmation by the person signing the statement that the statements contained therein are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor.

3. The date on the form indicates that it was completed by Officer Kerr on June 6, 2003; however, a received stamp on the form reveals that it was not received by the DMV until June 11, 2003. W. Va.Code § 17C–5A–1(b) requires an arresting officer to submit the written statement within forty-eight hours of the arrest. However, this Court has held that

A law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of *W. Va.Code,* 17C–5A–1(b)

[1994] is not a bar or impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure.

Syl. pt. 1, *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999). Although Ms. Crouch notes the delayed filing of the form, she has failed to allege any actual prejudice.

4. The revocation order specifically stated, in relevant part,

YOUR REVOCATION PERIOD FOR REFUSING THE SECONDARY CHEMICAL TEST IS ONE (1) YEAR. YOUR REVOCATION PERIOD FOR DRIVING UNDER THE INFLUENCE IS SIX (6) MONTHS, WITH ELIGIBILITY IN NINETY (90) DAYS PROVIDED YOU HAVE COMPLETED THE MANDATORY SAFETY AND TREATMENT PROGRAM, AND THEREAFTER, ACCORDING TO ANY PREVIOUS ORDER ISSUED BY THIS DIVISION. YOUR PRIVILEGE TO DRIVE IN THE STATE OF WEST VIRGINIA CANNOT BE REINSTATED UNTIL YOU SUCCESSFULLY COMPLETE THE SAFETY AND TREATMENT PROGRAM.

5. Related criminal charges against Ms. Crouch were dismissed after Officer Kerr failed to appear at the criminal proceedings.

Virginia Code § 17C–5–4, and the time limit for refusal, specified in West Virginia Code § 17C–5–7." Therefore, no period of license revocation was imposed with respect to Ms. Crouch's refusal of a secondary chemical test.

Ms. Crouch appealed the Commissioner's order to the Circuit Court of Raleigh County, West Virginia. By order entered November 19, 2004, the circuit court concluded that, because Officer Kerr failed to testify that the traffic stop and arrest of Ms. Crouch had occurred within the town limits of Mabscott, Raleigh County, West Virginia, no jurisdiction had been established in this case.[6] Based upon this conclusion, the circuit court reversed the Commissioner's order revoking Ms. Crouch's driver's license. The DMV appealed the circuit court's order to this Court. We granted review and now reverse the circuit court's order.

## II.

## STANDARD OF REVIEW

■ The circuit court order appealed in this case reversed a revocation decision of the Commissioner of the DMV. " 'In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo.' Syl. pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996)." Syl. pt. 1, *Hoover v. West Virginia Bd. of Med.*, 216 W.Va. 23, 602 S.E.2d 466 (2004).

## III.

## DISCUSSION

■ In this case we are asked to determine whether there was sufficient evidence presented at the DMV's administrative hearing to support the Commissioner's finding that Officer Kerr possessed the requisite jurisdiction to arrest Ms. Crouch for DUI. The only evidence expressly stating that the arrest occurred in Mabscott, West Virginia, which is the area of Officer Kerr's jurisdiction, was the "STATEMENT OF ARRESTING OFFICER."[7] Thus, the dispositive issue in this case is whether the "STATEMENT OF ARRESTING OFFICER" was admissible evidence in the administrative hearing.

On appeal, the DMV argues that the circuit court erred in relying solely on the testimony of the arresting officer, to the exclusion of the evidence contained in the sworn document titled "STATEMENT OF ARRESTING OFFICER," in finding that the state failed to establish jurisdiction. The DMV asserts that the officer's statement was properly accepted into evidence by the hearing examiner pursuant to W. Va.Code § 29A–5–2(b), and that the statement, when combined with the testimony of the arresting officer, established that the officer had jurisdiction to make the arrest. Moreover, the DMV points out that the evidence pertaining to the officer's jurisdiction to make the arrest was uncontroverted at the hearing.

Ms. Crouch responds that the circuit court correctly found that the State had failed to establish jurisdiction in this case. Ms. Crouch contends that the State bears the burden of establishing jurisdiction and it failed to fulfill that burden. Ms. Crouch characterizes the "STATEMENT OF ARRESTING OFFICER" as an ex parte statement that should not be sufficient to establish jurisdiction absent sworn testimony and cross-examination. Finally, Ms. Crouch contends that allowing the "STATEMENT OF

---

**6.** The circuit court judge, H.L. Kirkpatrick, III, stated in his order that

the undersigned is completely unfamiliar with the streets and street names in the Town of Mabscott. The Court has no idea where Ridge Street or Walker Street is [sic] located. Therefore, this Court cannot take judicial notice that the events of this case occurred within the town limits of the Town of Mabscott.

**7.** The testimonial evidence offered by Officer Kerr clearly established that he had observed Ms. Crouch driving erratically on Ridge Street, and that he performed a traffic stop and subsequently arrested Ms. Crouch on Walker. However, officer Kerr failed to testify that these streets are located in Mabscott West Virginia. The "STATEMENT OF ARRESTING OFFICER," clarifies this fact by plainly stating that the location of Ms. Crouch's arrest was Walker Street in Mabscott.

ARRESTING OFFICER" to fulfill the State's burden on the issue of jurisdiction would be a violation of the rules of evidence, which, under W. Va.Code § 29A–5–2(a), shall be followed in administrative proceedings.[8] We disagree.

Although W. Va.Code § 29A–5–2(a) has made the rules of evidence applicable to DMV proceedings generally, W. Va.Code § 29A–5–2(b) [9] has carved out an exception to that general rule in order to permit the admission of certain types of evidence in administrative hearings that may or may not be admissible under the Rules of Evidence.[10] Moreover, inasmuch as we view W. Va.Code § 29A–5–2(a) as a statute pertaining to the application of the Rules of Evidence to administrative proceedings generally, while W. Va.Code § 29A–5–2(b) specifically addresses the admission of particular types of evidence, W. Va.Code § 29A–5–2(b) would be the governing provision. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." *Syl. pt. 1, UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984). *See also Tillis v. Wright,* 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("specific statutory

language generally takes precedence over more general statutory provisions."); Syl. pt. 6, *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 527 S.E.2d 831 (1999) (quoting *UMWA by Trumka v. Kingdon* ); *Bowers v. Wurzburg,* 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails."); *Daily Gazette Co., Inc. v. Caryl,* 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]").

West Virginia Code § 29A–5–2(b) states:

> *All evidence, including* papers, records, agency staff memoranda and *documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case,* and no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

(Emphasis added). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl.

---

8. W. Va.Code § 29A–5–2(a) states:

   In contested cases irrelevant, immaterial, or unduly repetitious evidence shall be excluded. *The rules of evidence as applied in civil cases in the circuit courts of this state shall be followed.* When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Agencies shall be bound by the rules of privilege recognized by law. Objections to evidentiary offers shall be noted in the record. Any party to any such hearing may vouch the record as to any excluded testimony or other evidence.
   (Emphasis added).

9. West Virginia Code § 29A–5–2(b) states:

   *All evidence, including* papers, records, agency staff memoranda and *documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case,* and no other factual information or evidence shall be considered in the determination of the case. Documentary

evidence may be received in the form of copies or excerpts or by incorporation by reference.
(Emphasis added).

10. Assuming arguendo that the West Virginia Rules of Evidence were to apply to this issue, the "STATEMENT OF ARRESTING OFFICER" would nevertheless be admissible. West Virginia Rule of Evidence 803(8)(C) provides an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Subsection (C) would apply to the extent that this Court has characterized administrative revocation hearings as civil in nature. *See Carte v. Cline,* 200 W.Va. 162, 167, 488 S.E.2d 437, 442 (1997) ("Administrative revocation hearings are civil in nature ....."). Accordingly, as a statement that sets forth "factual findings resulting from an investigation made pursuant to authority granted by law" as outlined in West Virginia Rule of Evidence 803(8)(c), the "STATEMENT OF ARRESTING OFFICER" would be admissible under that rule.

pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). However, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). We find no ambiguity in W. Va.Code § 29A–5–2(b); therefore, we are bound to apply its plain terms. Without a doubt, the Legislature enacted W. Va.Code § 29A–5–2(b) with the intent that it would operate to place into evidence in an administrative hearing "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself . . . ." W. Va.Code § 29A–5–2(b). Indeed, admission of the type of materials identified in the statute is mandatory, as evidenced by the use of the language "*shall be offered and made a part of the record in the case* . . . ." *Id.* This Court has long recognized the mandatory meaning attached to the word "shall." " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " *Retail Designs, Inc. v. West Virginia Div. of Highways,* 213 W.Va. 494, 500, 583 S.E.2d 449, 455 (2003) (quoting Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1982)).

It is without question that the "STATEMENT OF ARRESTING OFFICER" at issue in this case is among the materials identified in W. Va.Code § 29A–5–2(b). Specifically, it is a "document[ ] in the possession of the agency, of which it desires to avail itself . . . ." W. Va.Code § 29A–5–2(b). This is demonstrated by the statement of Mr. Cox, the hearing examiner for the DMV who presided over Ms. Crouch's case, in which he stated "*I offer* and accept as evidence admissible in the hearing, *all documents contained in this file and are listed as exhibits one through five* . . . ." Exhibit 1, "Statement of Arresting Officer received June 11, 2003." [11] (Emphasis added).

Based upon the foregoing analysis, we now hold that, in an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va.Code § 17C–5A–1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va.Code § 29A–5–2(b) (1964) (Repl. Vol.2002).[12]

■ The circuit court may reverse an order rendered by an administrative agency only under the limited circumstances which have be set out in W. Va.Code § 29A–5–4(g):

" 'Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or

11. It is not disputed that the "STATEMENT OF ARRESTING OFFICER" was in the possession of the agency and that the agency desired to avail itself of the document as required by W. Va.Code § 29A–5–2(b). Nevertheless, we note that the record reflects that the requirements of W. Va.Code § 29A–5–2(b) were met in this case. Hearing examiners such as Mr. Cox are representatives of the DMV. *See, e.g., McDonald v. Cline,* 193 W.Va. 189, 191, 455 S.E.2d 558, 560 (1995) (indicating that DMV hearing examiners are employed by the DMV); W. Va.Code § 17C5A–2(a) (2004) (Repl.Vol.2004) (authorizing DMV Commissioner to retain hearing examiners to preside over administrative hearings). The document was plainly in the possession of Mr. Cox, a representative of the DMV, and the DMV desired to avail itself of that document, as evidenced by the quoted statement by Mr. Cox accompanying this note.

12. We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy. In the instant case, evidence pertaining to officer Kerr's jurisdiction was uncontroverted.

(3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' Syllabus Point 2, *Shepherdstown Volunteer Fire Dept. v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983)." Syl. Pt. 1, *Johnson v. State Dep't of Motor Vehicles*, 173 W.Va. 565, 318 S.E.2d 616 (1984).

Syl. pt. 3, *State ex rel. Miller v. Reed*, 203 W.Va. 673, 510 S.E.2d 507 (1998). In the instant case, the "Statement of Arresting Officer," which was properly admitted into evidence in the administrative hearing, along with the testimony of Officer Kerr, establish by a preponderance of the evidence that Ms. Crouch was arrested within the city limits of Mabscott, West Virginia, and within Officer Kerr's jurisdiction. Furthermore, the DMV Commissioner's final order made specific findings that "On June 6, 2003, Mabscott City Policeman J.M. Kerr was on patrol *in the city limits of Mabscott, Raleigh County, West Virginia* at approximately 1:12 a.m.," and that "she [Ms. Crouch] *was placed under arrest in Mabscott, Raleigh County, West Virginia.*" (Emphasis added). In light of these specific findings, and the complete absence in the record of any contradictory evidence, we find it was an abuse of discretion for the Circuit Court to reverse the order of the Commissioner of the DMV.

## IV.

### CONCLUSION

In accordance with the foregoing discussion, the November 19, 2004, order of the Circuit Court of Raleigh County is reversed.

Reversed.