No. 12-1403 – *Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles v. James A. Odum*

No. 12-1509 – *Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles v. Chad Doyle*

**FILED**

July 18, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Benjamin, Justice, concurring, in part, and dissenting, in part:

This Court's jurisprudence in *State ex rel. State v. Gutske*, 205 W. Va. 72, 516 S.E.2d 283 (1999), allows a police officer outside of his or her jurisdiction to execute a citizen's arrest of a person suspected of DUI. I therefore concur with the majority's decision regarding the revocation of Mr. Odum's driver's license.

However, I disagree with the majority's decision to revoke Mr. Doyle's driver's license. The record in this case demonstrates that the Division of Motor Vehicles ("DMV") failed to provide sufficient evidence showing that Mr. Doyle's vehicle was lawfully stopped by Patrolman Benjamin Anderson. Without establishing that threshold, the DMV did not meet its burden of showing that Mr. Doyle was lawfully arrested pursuant to W. Va. Code § 17C-5A-2(f) (2) (2013), and therefore, it could not lawfully revoke his license.

The majority finds that the arresting officer/DUI Information Sheet ("DUI Information Sheet")—completed not by Patrolman Anderson, but later by West Virginia

1

State Police Trooper Martin Glende—was sufficient to establish the legality of the stop of Mr. Doyle's vehicle. The DUI Information Sheet mentions a discussion which Trooper Glende's had with Patrolman Anderson about the stop, stating, in relevant part, "Patrolman B. Anderson stated that he observed a white in color 2009 Ford Van bearing FL registration L191WV turn left out of the Charles Town Race Track at a right turn only intersection. At this time, Patrolman Anderson initiated a traffic stop on the stated vehicle." The majority concludes that pursuant to syllabus point 3 of *Crouch v. West Virginia Division of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006),[1] the DUI Information Sheet is admissible and that because Mr. Doyle "did not come forward with any evidence challenging the content of that document[,] . . . there was unrebutted evidence admitted during the administrative hearing that established a valid stop of Mr. Doyle's vehicle."

In its application of *Crouch*, the majority has confused the burden placed on the DMV in driver's license revocation proceedings: It is the DMV's burden to prove that the arrest was lawful. In *Crouch*, the DUI Information Sheet was completed by the officer who initiated the stop and ultimately executed the arrest. The question presented

---

[1] Syllabus point 3 of *Crouch* states,

> In an administrative hearing conducted by the [DMV], a statement of an arresting officer, as described in W. Va.Code § 17C-5A-1(b) (2004) (Repl.Vol.2004), that is in the possession of the [DMV] and is offered into evidence on behalf of the [DMV], is admissible pursuant to W. Va.Code § 29A-5-2(b) (1964) (Repl.Vol.2002).

to the Court in *Crouch* was whether the officer was acting within his jurisdiction. The arresting officer did not specifically testify during the administrative hearing as to whether the arrest occurred within his jurisdiction; however, the DUI Information Sheet he completed specified that the arrest was indeed executed within the officer's jurisdiction. Upon review, the Court concluded that information contained within the DUI Information Sheet concerning the location of the arrest was sufficient to establish that the arresting officer was acting within his jurisdiction. The Court reasoned that the DUI Information Sheet created a rebuttable presumption as to its accuracy and that "evidence pertaining to [the officer's] jurisdiction was uncontroverted." *Id.* at 76 n.12, 631 S.E.2d at 634 n.12.

Syllabus point 3 of *Crouch* is not applicable here because its facts are fundamentally different from this case: In *Crouch*, the officer who stopped the vehicle also completed the DUI Information Sheet and testified at the administrative hearing. The respondent had every opportunity to challenge the contents of the DUI Information Sheet on the truthfulness of its representations. In the present case, the only information concerning the stop of Mr. Doyle is the second-hand "testimony" of Patrolman Anderson as described by Trooper Glende in the DUI Information Sheet. Patrolman Anderson did not testify at the administrative hearing, and thus no party was able to question him regarding the legality of the stop.

It is firmly rooted in our jurisprudence that hearsay not falling within an exception specifically delineated in the West Virginia Rules of Evidence is unreliable. *See, e.g.*, *State v. Boyd*, 167 W. Va. 385, 397, 280 S.E.2d 669, 679 (1981) ("The underlying rationale of the hearsay rule is to prevent the admission into evidence of unreliable or untrustworthy evidence. The major vehicle through which trustworthiness of evidence is guaranteed is cross-examination."). I do not believe that hearsay "testimony" within a DUI Information Sheet without more may satisfy the DMV's burden of proving that Patrolman Anderson's stop was lawful. Furthermore, by applying a rebuttable presumption of reliability to the inherently unreliable hearsay contained within the DUI Information Sheet, the majority has impermissibly shifted the burden of proving the legality of the stop from the DMV to Mr. Doyle.

It is unclear why the DMV did not call Patrolman Anderson as a witness at the administrative hearing. Had it done so, and had Patrolman Anderson's testimony matched the hearsay statements in the DUI Information Sheet, the DMV would have satisfied its burden of showing that the arrest was lawful, and I would have supported the revocation of Mr. Doyle's driver's license. However, because the burden to prove that Patrolman Anderson's stop of Mr. Doyle was lawful is the DMV's, and because the presumptively unreliable hearsay statements contained within the DUI Information Sheet alone fail to satisfy that burden, I believe the hearing examiner and the circuit court correctly reversed the revocation of Mr. Doyle's driver's license. To the extent that the

4

majority decided otherwise, I dissent with respect to Mr. Doyle's case. I concur with the majority with respect to Mr. Odum's case.