# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Patricia S. Reed, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 17-0797** (Kanawha County 14-AA-3)

**Brett A. Lemley,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the Circuit Court of Kanawha County's August 8, 2017, order affirming the final order of the Office of Administrative Hearings ("OAH"), which modified the DMV's order revoking respondent's license. Respondent Brett A. Lemley, by counsel George J. Cosenza, filed a response. Petitioner filed a reply. On appeal, petitioner contends that the circuit court erred in ignoring the results of the secondary chemical test of respondent's breath.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for reinstatement of the DMV's revocation order.

Officer J. M. Cumpston responded to the scene of an automobile accident on February 16, 2013. Officer Cumpston noted that respondent, who was driving one of the vehicles involved in the accident, was unsteady walking to the roadside and while standing, and had the odor of alcohol on his breath, slurred speech, and glassy, bloodshot eyes. Consequently, the officer performed the horizontal-gaze-nystagmus ("HGN"), walk-and-turn, and one-leg-stand field sobriety tests. Respondent failed all three tests. Officer Cumpston arrested respondent for driving under the influence ("DUI"), handcuffed him, and then placed him in his cruiser for transport to the police department. Once respondent arrived at the police department, Officer Cumpston gave him a secondary chemical test of the breath after reading and providing to him an implied consent form. The officer also affirmed in his investigation report that he "checked subject and then observed for twenty (20) minutes prior to collection of breath specimen to ensure the

1

subject has not ingested food, drink nor has other foreign matter in his/her mouth." The secondary chemical test showed a blood alcohol concentration of 0.21%.[1]

On March 13, 2013, the DMV issued a license revocation order to respondent. Respondent requested a hearing before the OAH on the revocation order to challenge the results of the secondary chemical test, among other things. This hearing was held on November 1, 2013. Respondent did not appear for the hearing, but was represented by counsel.

At the hearing, Officer Cumpston testified to the field sobriety tests given to and failed by respondent. The officer also testified regarding the secondary chemical test given to respondent. Specifically, when asked whether he watched respondent to see whether he had ingested anything prior to taking that test, Officer Cumpston testified affirmatively:

> A    Of course, from the time of contact I had been watching him. It looks like I read the implied consent at 03:53 hours and then the test was actually given at 04:02 hours.
>
> Q    Okay. Did he ingest anything into his mouth at all during the time you observed him?
>
> A    No.
>
> Q    And you watched him all during this time?
>
> A    Yes.

Officer Cumpston further testified that his initial contact with respondent began at approximately 3:27 a.m.

On cross-examination, Officer Cumpston gave the following testimony relevant to the secondary chemical test:

> Q    [Respondent] was in the back seat and you were in the front seat driving, right, during the period of time that you transported him [to the police department]?
>
> A    Yes.
>
> Q    And then you would have gotten out of the car and taken him up to the third floor?
>
> A    Yes.

---

[1]Because respondent's blood alcohol level was 0.15% or more, petitioner's DUI was characterized as "aggravated" rather than "simple." *See* W.Va. Code § 17C-5A-2(k)(1).

2

Q  Now, is it your practice when you first get up there to read the implied consent form? Is that the first thing you do?

A  I try to.

. . . .

Q  And then you gave him the [secondary chemical] test, right?

A  At some point, yes. I don't know if I immediately went in there and did that.

Q  All right. Well, let's look at your sheet. . . . Look on your sheet and tell me what time you gave him the test.

A  04:02.

Q  4:02 a.m. And you would agree with me that that's less than [twenty] minutes –

A  Yes.

Q  - after you read him the implied consent form?

A  Yes.

Q  So we would conclude from that that from the time that you had him in the police station upstairs to the time you gave him the test you didn't observe him for 20 minutes?

A  At that time probably not, but I observed him the – he was with me in the car ride the whole way down there, at the scene.

. . . .

Q  [F]rom the time you read him this implied consent form, which you believe you read to him when you first got to the police station, to the time you gave him the test was not [twenty] minutes?

A  Correct.

Q  So you didn't observe him in the police station for [twenty] minutes, according to your testimony; is that correct?

A  Correct.

3

Q       Now you say that – I think what you're trying to say, and if I'm putting words in your mouth just correct me, okay, that your [twenty]-minute observation period included the drive from the scene to the police station?

A       Yes.

Q       And you believe you were observing him even though he was in the back seat and you were in the front seat and you were watching the road as you went?

A       Yes.

Respondent's counsel then informed Officer Cumpston that the "Board of Health regulations in West Virginia says that you have to constantly observe him for [twenty] minutes, right, before you give him the test. That's what it says."[2] Counsel continued,

Q       [N]ow that you understand that, even though you didn't know about it before, is it your testimony that you constantly observed [petitioner] [twenty] minutes before giving him that test? Is that your testimony under oath here today?

A       If I was driving I obviously constantly couldn't observe him, so no.

Q       So the answer to my question is you didn't constantly observe him for [twenty] minutes before administering that test, correct?

A       Correct.

Later testimony from Officer Cumpston clarified that secondary blood test started at 4:02 a.m., but petitioner physically blew into the machine at 4:07 a.m. Respondent's counsel inquired,

Q       All right, it was 4:07. That's still not twenty minutes from the time you read him the implied consent form.

A       No.

---

[2]In administering the secondary chemical test of the breath, West Virginia Code of State Rules § 64-10-7.2(a) requires that

[t]he law enforcement officer shall keep the person being tested under constant observation for a period of twenty minutes before the test is administered to insure that the person has nothing in his or her mouth at the time of the test and that he or she had no food or drink or foreign matter in his or her mouth during the observation period.

4

At the close of Officer Cumpston's testimony, petitioner moved to admit into evidence, among other things, the results of the secondary chemical test. Respondent's counsel objected on the basis that the officer did not observe respondent for twenty minutes prior to administering the test. The hearing examiner ruled as follows:

> EXAMINER DELONG: The objection is overruled. The documents in question[] will be made a part of the record collectively as [Petitioner's] Exhibit No. 1.

> [Respondent's counsel]: Is your ruling just that the documents are coming in, or is the court going to allow the result of the breathalyzer to come in as a result of that (inaudible).

> EXAMINER DELONG: I'm just admitting the documents.

On December 15, 2016, the OAH entered its final order modifying the revocation order. The final order affirmed the DMV's conclusion that respondent was DUI, but reversed the conclusion that he was DUI with a blood alcohol concentration in his blood of fifteen hundredths of one percent or more, by weight. In support of reversing the aggravated DUI findings, the OAH noted that after arresting respondent,

> the Investigating Officer placed him in his police vehicle and left him unattended for some unspecified period of time before transporting him to the Parkersburg Police Department for processing. Evidence presented at the hearing shows that the Implied Consent notification procedures were completed at 3:53 a.m. and the [respondent] provided a breath specimen for analysis at 4:07 a.m., a time span of only fourteen minutes.

> Since it is unclear whether at least six minutes elapsed from when the Investigating Officer entered his police cruiser to take the [respondent] to the Parkersburg Police Department until the Implied Consent notification procedures were accomplished, the record fails to demonstrate that the Investigating Officer observed the [respondent] continuously for the requisite twenty minutes before administering the secondary chemical test of the breath to him. Therefore, the results of the secondary chemical test were not accepted into evidence nor accorded any weight.

Petitioner appealed the OAH final order to the circuit court. The circuit court affirmed the OAH final order on August 8, 2017, finding that "the investigating officer testified that he failed to constantly observe the [r]espondent for twenty (20) minutes prior to the administration of the secondary chemical test." It is from this order that petitioner appeals.

This Court, in reviewing a circuit court's order in an administrative appeal, "is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless

the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). These statutory standards provide that

> [t]he court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, or decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W.Va. Code § 29A-5-4(g).

On appeal, petitioner argues that the OAH and circuit court were clearly wrong to ignore the unrebutted evidence that the investigating officer observed respondent for the requisite twenty minutes prior to administering the secondary chemical test. Petitioner argues that the observation period need not be limited to visual observation. Additionally, petitioner claims that the OAH erred in failing to admit the results of the secondary chemical test into evidence.

We begin by noting that West Virginia Code § 29A-5-2(b) directs that

> [a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or evidence shall be considered in the determination of the case.

We have previously stated that "[w]ithout a doubt, the Legislature enacted W.Va. Code § 29A-5-2(b) with the intent that it would operate to place into evidence in an administrative hearing "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself." *Crouch v. W.Va. Div. of Motor Vehicles*, 219 W.Va. 70, 76, 631 S.E.2d 628, 634 (2006). As evidenced by the use of the word "shall," admission of the evidence identified in the statute is mandatory. *Id.* The secondary chemical test result was in the DMV's possession, and the DMV sought to avail itself of the result. Accordingly, the result of the secondary chemical test should have been admitted into evidence,

subject to a rebuttable presumption as to its accuracy. *Id.* at 76, n.12, 631 S.E.2d at 634, n.12 ("We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.").

We further find that the circuit court's conclusion that the investigating officer failed to observe respondent for twenty minutes prior to the administration of the secondary chemical test is clearly wrong. We have held that

> [t]he requirement in West Virginia C.S.R. § 64-10-7.2(a) (2005) that a law enforcement officer shall keep the person being tested under constant observation for a period of twenty minutes before administering a secondary chemical breath test does not require uninterrupted visual monitoring. The observation may be accomplished by the officer's use of his or her visual, auditory, and olfactory senses.

Syl. Pt. 6, *Reed v. Hill*, 235 W.Va. 1, 770 S.E.2d 501 (2015).[3] The testimony given by Officer Cumpston outlined above clearly reveals a focus on visual observation without consideration of the fact that he could permissibly use other senses in observing respondent. For instance, the investigating officer was asked whether he believed he was observing respondent "even though [respondent] was in the back seat and you were in the front seat and you were watching the road as you went?" The investigating officer responded, "If I was driving I obviously constantly couldn't observe him, so no." The questions asked and answers given implicate only visual observation, but the observation period is decidedly not limited to visual observation. "The regulation does not limit the period of constant observation to 'constant visual observation,' and a law enforcement officer can ensure that a person has nothing in his or her mouth without fixedly staring at the person for the entire twenty-minute period." *Id.* at 12, 770 S.E.2d at 512. Officer Cumpston testified that he observed respondent for the requisite time period, and his investigation report completed at the time of respondent's arrest confirms the same. At best, respondent's counsel called into question Officer Cumpston's *visual* observation of respondent, but that alone is insufficient to establish that Officer Cumpston failed to comply with the observation requirement. Indeed, we do not interpret the regulation "to require that a law enforcement officer may never divert his or her eyes from the person to be tested, even when the person in in close proximity to the officer." *Id.*

Moreover, the testimony elicited from Officer Cumpston erroneously limits the observation period to the time between respondent's completion of the implied consent form and the administration of the test. Respondent's counsel repeatedly asked Officer Cumpston to note the time listed on the implied consent form and compare it to the time respondent was given the secondary chemical test, and counsel highlighted the amount of time respondent was in the

---

[3]We acknowledge that the OAH did not have the benefit of the *Hill* decision at the time it conducted the parties' hearing; however, the *Hill* case was decided prior to the OAH's issuance of its decision, and it was available to and cited by the circuit court in reviewing the OAH's decision.

police station. Counsel inquired, "So we would conclude from that that from the time that you had him in the police station upstairs to the time you gave him the test you didn't observe him for [twenty] minutes[;]" "[F]rom the time you read him this implied consent form . . . to the time you gave him the test was not [twenty] minutes[;]" and "So you didn't observe him in the police station for [twenty] minutes, according to your testimony[.]" We have previously rejected such a focus as too narrow:

> Beginning the observation period from the time when the implied consent form is signed would be a convenient way to ensure that the twenty-minute period is observed. However, the rule does not mandate that obtaining a signature on a form be the starting point for the observation. The rule only requires that the twenty-minute observation period occur before the administration of the test.

*Id.* Accordingly, the focus on the time between respondent's signing of the implied consent form and the administration of the secondary chemical test was in error and failed to rebut Officer Cumpston's testimony that he observed respondent from the time he first made contact with respondent, at approximately 3:27 a.m.

Finally, the purpose of the twenty-minute observation period is to ensure "that the person being tested has nothing in his or her mouth at the time of the test and has had no food, drink, or foreign matter in his or her mouth during the observation period." *Id.* at 13, 770 S.E.2d at 513. Officer Cumpston's unrebutted testimony is that respondent did not ingest anything while in his presence. As a result, the preponderance of the evidence establishes that respondent was DUI with a blood alcohol level of 0.15% or more, and the circuit court erred in affirming the OAH's order modifying the DMV's revocation order.

For the foregoing reasons, the circuit court's August 8, 2017, order is hereby reversed, and the case is remanded for entry of an order reinstating the DMV's revocation order.

Reversed and remanded.

**ISSUED**: October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating