**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Everett Frazier,**
**Commissioner of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 20-0314** (Marion County CC-24-2019-AA-1)

**Sandra B. Shaffer,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Janet E. James, appeals the order of the Circuit Court of Marion County, entered on March 2, 2020, which reversed the order of the Office of Administrative Hearings and reinstated the driving privileges of respondent Sandra B. Shaffer. Respondent appears by counsel Michael D. Simms.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order consistent with this decision.

In the instant case, Deputy Jimmy Bledsoe of the Marion County Sheriff's Office observed respondent's vehicle straddling the center line and also running off of the right of Kingmont Road in Marion County, West Virginia. Deputy Bledsoe initiated a stop of respondent's vehicle and noted that respondent had a white powdery substance on and around her nose and the odor of alcohol on her breath. Further, Deputy Bledsoe noted that respondent had slow and slurred speech, bloodshot eyes, had a bottle of Bud Light in her car, and admitted that she had consumed beer prior to the stop.

Deputy Bledsoe explained the horizontal gaze nystagmus ("HGN") test to respondent. During the medical assessment portion of the test, Deputy Bledsoe noted that she had equal pupils and equal tracking, and no resting nystagmus, which rendered respondent a viable candidate for the test. During the test, respondent showed impairment because she had lack of smooth pursuit in her left and right eyes, and distinct and sustained nystagmus at maximum deviation in both eyes.

1

Respondent also showed impairment during the walk and turn test where she was unable to keep her balance, stopped while walking, stepped off the line, missed heel-to-toe, and raised her arms to balance. Deputy Bledsoe reported that respondent nearly fell down during this test. During the one-leg stand test, respondent showed impairment because she swayed while balancing, used her arms to balance, and put her foot down.

Deputy Bledsoe then arrested respondent for DUI. Prior to administering the Intoximeter test, a secondary chemical test, Deputy Bledsoe observed respondent for twenty minutes to ensure that she had not ingested any food, drink, or other foreign matter. Deputy Bledsoe also ran checks on the Intoximeter testing instrument, confirming that it was functioning properly. Respondent refused to submit to the Intoximeter test at 9:12 p.m. Per the DMV file, respondent admitted that she had consumed one beer prior to the stop and was under the influence of alcohol, drugs or controlled substances.[1] Respondent further advised Deputy Bledsoe that she took Lortab, Zanaflex and Tramadol that evening.

The DMV issued a revocation of respondent's driver's license for DUI on May 23, 2012. On June 25, 2012, respondent requested a hearing on the revocation of her license and refusal to submit to the designated secondary chemical test. After multiple continuances of the evidentiary hearing, the Office of Administrative Hearings ("OAH") conducted an evidentiary hearing on March 17, 2017.[2]

Deputy Bledsoe was not subpoenaed as a witness at the OAH hearing and he did not appear before the OAH. Petitioner argued that it was not required to call Deputy Bledsoe and respondent had the right to subpoena the officer if she wanted to secure his presence at the hearing. Over respondent's objection, the hearing examiner admitted the DMV's agency records, which included the DUI information sheet, a printout from the secondary chemical test, and a copy of respondent's driving record. Further, the OAH specifically advised respondent that she was entitled to contest the exhibits within the DMV's agency record. Respondent's counsel vouched the record with what he would have cross-examined Deputy Bledsoe about, including respondent's driving at the time

---

[1] The circuit court noted that respondent later testified that she was "confused regarding the investigating officer's post-arrest questioning; that she did not mean to say that she was under the influence; and that she responded affirmatively because she knew that she had taken her prescribed medication."

[2] The hearing was originally scheduled on November 29, 2012. Respondent claims that she was prejudiced by the pre-hearing delay prior to the OAH hearing. She argues that had this matter been timely set for a hearing before the OAH within 180 days, it would have been considered prior to this Court's February 2014, decision *Dale v. Doyle*, 233 W. Va. 601, 760 S.E.2d 415 (2014), and thus the officer would have been required to attend the hearing. However, we find no merit in respondent's argument in this regard. Here, the record reflects that respondent filed six separate motions to continue the OAH hearing; accordingly, we are not persuaded by her arguments of prejudice as to delay.

of the traffic stop, the traffic stop itself, the administration of the preliminary breath test to respondent, and the administration of and respondent's performance on, the field sobriety tests.[3]

Respondent testified at the OAH hearing that she was taking Flexeril, Lortab, and "a couple other nerve pills" at the time of her traffic stop. Prior to the stop, she testified that she had gone to her friend Linda Simmons' house to take her blood pressure, and while there, she consumed half a beer. Respondent denied being under the influence, denied that her prescribed medications had affected her driving, and denied that there was a bottle of beer in her vehicle. Further, respondent denied that she exhibited any indicia of impairment and testified that she ostensibly passed the field sobriety tests including the walk-and-turn test and one-leg stand tests. Respondent also offered testimony from, Brenda Shuman-Riley, her co-worker, who testified as to her observations of respondent on the date in question. Per Ms. Shuman-Riley, respondent's face was red and respondent had been complaining of numbness. Further, Ms. Shuman-Riley recalled that she did not observe respondent drink any alcoholic beverages while at work on the day in question. Respondent then introduced three exhibits, including letters from Ms. Shuman-Riley and Ms. Simmons. Ms. Simmons' letter confirmed respondent's testimony that respondent had been at her house prior to the traffic stop and that Ms. Simmons had checked respondent's blood pressure because respondent's face was red and the left side of her face was numb. Ms. Simmons' letter also provided that respondent consumed half of a can of beer and ate a piece of pizza while at her house on the day in question.

After considering the evidence, the OAH entered a final order on June 10, 2019, which upheld the revocation of respondent's driver's license for DUI and for refusal to submit to the secondary chemical test. The OAH found

> that [respondent] failed to successfully dispute 1) that she ha[d] consumed alcohol, drugs, controlled substances, or any combination of the aforementioned prior to operating a motor vehicle; 2) that she exhibited indicia of intoxication and that she was unable to adequately perform field sobriety tests; and 3) that she drove a motor vehicle in this state while under the influence.

The hearing examiner specifically found that the investigating officer observed respondent's erratic driving behaviors and detected the odor of an alcoholic beverage emitting from respondent's breath. Additionally, the hearing examiner concluded that the investigating officer lawfully arrested respondent for driving while under the influence of alcohol, controlled substances, or drugs. The hearing examiner determined that respondent's testimony was not credible. As to this finding, the hearing examiner noted that respondent's testimony was "self-serving at best, first denying that she exhibited indicia of impairment and then offering excuses for such behaviors. [Respondent] alluded to a possible medical issue, which may have caused her to appear impaired, and then admitted, despite having concerns about her health, to consuming an alcoholic beverage prior to driving the motor vehicle."

---

[3] Deputy Bledsoe administered a preliminary breath test; however, the hearing examiner expressly did not consider the results because Deputy Bledsoe noted that the preliminary breath test was taken after only a fourteen minute observation period.

On July 11, 2019, respondent appealed the matter to the Circuit Court of Marion County. The circuit court held a hearing on the appeal on January 29, 2020. On March 2, 2020, the circuit court reversed the OAH's final order, finding that the DMV's file documents are not automatically admitted into the record. The circuit court further found that the DMV's agency file could not be admitted without the testimony of the investigating officer.

In its order, the circuit court noted that "[petitioner] offered no live testimony from any witness at the hearing." Additionally, the circuit court's order provided that "the OAH made no findings regarding [respondent's] testimony which directly contradicted the information in [the DMV file] regarding the implied consent warning, the administration of the secondary chemical test and [respondent's] submission to same." Ultimately, the circuit court concluded that "W.Va. Code 29-A-5-2(b) (sic) describes the designation of the record for purposes of appeal. It is not a rule mandating the automatic admission of [the DMV's file] in this administrative proceeding. Applying section twenty-nine a (sic) in this fashion is improper, as it directly conflicts with the application of the West Virginia Rules of Evidence."

Further, the circuit court found that "the OAH's decision to admit Deputy Bledsoe's reports without proper authentication, to accept all of the information contained therein as true, to find – based solely on those documents – that [petitioner] had met its burden of proof on all relevant issues, including the issue of implied consent, and to look to [respondent] to rebut or "successfully dispute" the information, impermissibly shifted the burden of proof to [respondent], and was arbitrary, capricious, and an abuse of discretion." Finally, the circuit court found that "[g]iven that substantially all of the OAH's factual findings, discussion and conclusions of law in its Final Order were based on [petitioner's] improperly admitted documents, this [c]ourt concludes that the OAH's affirmation of [petitioner's] order of revocation was arbitrary, capricious, an abuse of discretion, and clearly wrong in view of the reliable, probative and substantial evidence on the whole record."

Petitioner filed this appeal challenging the circuit court's March 2, 2020, order. On appeal, petitioner raised two assignments of error. First, petitioner argues that the circuit court erred in finding that the DMV's agency file cannot be admitted into evidence pursuant to West Virginia Code § 29A-5-2(b). Next, petitioner claims that the circuit court erred when it found that the absence of the investigating officer's testimony at the OAH hearing precludes the DMV agency's file being admitted into evidence. We will address these assignments below.

In *Frazier v. Fouch*, No. 19-0350, 2020 WL 7222839 (W. Va. Nov. 6, 2020), we reiterated the standard of review to govern this matter.

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

> "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the

4

ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*" Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

Syl. Pts. 1 and 2, *Fouch*. Guided by this standard, we review petitioner's arguments.

Petitioner initially argues that the circuit court erred when it found that the DMV's agency file cannot be admitted into evidence pursuant to West Virginia Code § 29A-5-2(b). Respondent maintains that the circuit court properly held that that the DMV file was improperly admitted before the OAH. Consistent with our ruling in *Fouch*, we agree with petitioner.

In Syllabus Point 3 of *Fouch*, we held:

> "In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002)." Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles,* 219 W. Va. 70, 631 S.E.2d 628 (2006).

In *Fouch*, we found that the circuit court erred by ruling that the DMV's file, including the DUI information sheet, should not have been admitted into evidence and considered by the OAH. The *Fouch* Court also addressed earlier memorandum decisions from this Court wherein we discussed that the admission of the DMV file is mandatory before the OAH. Specifically, the *Fouch* decision referenced our 2018 decision where we noted

> [w]e have previously stated that "[w]ithout a doubt, the Legislature enacted W. Va. Code § 29A-5-2(b) with the intent that it would operate to place into evidence in an administrative hearing ['a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself.[']" *Crouch*, 219 W.Va. [at] 76, 631 S.E.2d [at] 634. As evidenced by the use of the word "shall," admission of the evidence identified in the statute is mandatory. *Id.* The secondary chemical test result was in the DMV's possession, and the DMV sought to avail itself of the result. Accordingly, the result of the secondary chemical test should have been admitted into evidence, subject to a rebuttable presumption as to its accuracy. *Id.* at 76, n.12, 631 S.E.2d at 634, n.12 ("We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.").

*Fouch*, 2020 WL 7222839, at *6 (quoting *Reed v. Lemley*, No. 17-0797, 2018 WL 4944553, at *4 (W. Va. Oct. 12, 2018) (memorandum decision)).

Petitioner also alleges that the circuit court erred in finding that the absence of Deputy Bledsoe's testimony at the OAH hearing precluded the DMV agency file from being admitted into

5

evidence.[4] Consistent with *Fouch* and the other decisions cited by this Court therein, testimony from Deputy Bledsoe was not required for the OAH to admit and consider petitioner's records. Thus, we find that the OAH appropriately accepted petitioner's file and the DUI information sheet into evidence in this matter without testimony from Deputy Bledsoe and the circuit court's finding to the contrary was erroneous.

Given that the DMV file was appropriately before the OAH, we presume that the OAH gave this evidence, as well as the testimony and evidence presented by respondent, the weight that the OAH thought it deserved.[5] Contrary to our established precedent, it does not appear that the circuit court gave deference to the factual findings or the credibility determinations made by the OAH when it concluded that the DMV file would have been "credibly contradicted by [respondent's] sworn testimony." As noted above, in the order revoking respondent's license, the hearing examiner found that respondent's testimony was not credible and was "self-serving at best."

For the foregoing reasons, the circuit court's March 2, 2020, order is hereby reversed, and the case is remanded for entry of an order consistent with this decision.

Reversed and remanded.

**ISSUED:** February 19, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton

---

[4] As we noted in *Fouch*, "[t]he clear, unambiguous language of [West Virginia Code § 17C-5A-2(c)(3)] provides that 'the party' seeking to compel a witness to appear at an OAH hearing has the responsibility to request the subpoena, and the responsibility to petition the circuit court for enforcement of the subpoena when the witness fails to appear." *Fouch*, 2020 WL 7222839, at *8. If respondent had wanted to procure Deputy Bledsoe's appearance at the OAH hearing, respondent should have subpoenaed him.

[5] To the extent that the circuit court showed a preference for live testimony over documentary evidence this Court has noted that "[o]ur law recognizes no such distinction in the context of drivers' license revocation proceedings." *Groves v. Cicchirillo*, 225 W. Va. 474, 481, 694 S.E.2d 639, 646 (2010). Inasmuch as the DMV file was properly admitted, it would be improper for the circuit court to show a preference for live testimony over this documentary evidence.